4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

NOV 2 6 2001

| UNITED STATES OF AMERICA, | § | |
| Respondent–Plaintiff | § | |
| | § | |
| vs. | § | CA B–01–113 |
| | § | |
| OLGA CONTRERAS, | § | |
| Petitioner–Defendant | § | |
| (CR B–99–050–S1–01) | § | |

## GOVERNMENT'S ANSWER, MOTION FOR DISMISSAL UNDER 8(a) OF THE RULES FOLL. 28 U.S.C. § 2255, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

I.

On September 26, 2001, the court ordered the Government to respond to Contreras' 28 U.S.C. §2255 motion filed on June 27, 2001 by November 26, 2001. The Government moves to dismiss and, in the alternative, moves for summary judgment.

II.

Contreras was charged in the Southern District of Texas, Brownsville Division, in twenty-two counts of a forty-four count indictment, which included conspiracy to transport and to harbor illegal aliens in violation of 8 U.S.C. §§1324(a)(1)(A)(ii)(iii) and 1324(a)(1)(A)(v)(l), substantive counts of harboring illegal aliens in violation of 8 U.S.C. §§1324(a)(1)(A)(iii) and 1324(a)(1)(A)(v)(ll), conspiring to launder monetary instruments in violation of 18 U.S.C. §1956(a)(1)(A)(i), substantive money laundering counts in violation of 18 U.S.C. §1956(a)(1)(A)(i) and 2, conspiracy to commit food stamp fraud in violation of 7 U.S.C. §2024, a substantive food stamp fraud count in violation of 7 U.S.C.

§2024(b), conspiracy to defraud social security in violation of 42 U.S.C. §408(a)(6)(C), and substantive social security fraud counts in violation of 42 U.S.C. §406(a)(6)(C) (R. 132)[1]. She pled guilty to Count One (conspiracy to harbor illegal aliens) on July 7, 1999 in conformance with a FED. R. CRIM. P. 11(e)(1)(B) plea agreement, before the Honorable Hilda G. Tagle (R. 287, 288). In the plea agreement, in exchange for Contreras' plea of guilty to Count One and consent that the government may demolish four specified building properties owned by Contreras, the Government agreed to, recommend Contreras receive full credit for "Acceptance of Responsibility", that her relevant conduct be limited to "not less than twenty-five (25) illegal aliens nor more than ninety-nine (99) illegal aliens", that she be assessed "leader/organizer", and be sentenced to the bottom of the Guideline level she scores, and that the Government would move for the dismissal of the remaining counts at sentencing. The parties also stipulated that there was no "reckless endangerment" as to Contreras. The statutory maximum for Count One was ten years (R. 288[2]; PSR). During Contreras' rearraignment the district confirmed that Contreras understood the proceedings, the charges against her, understood the rights she was waiving by pleading guilty, the maximum punishment, (Rearraignnment p. 16, 19, 21, 27, 31, 32). The district court took particular pains to insure Contreras understood all aspects of the plea agreement

_____

[1] "R" refers to the record documents. The number proceeding "R" refers to the identification of such document within the criminal docket sheet. "PSR" refers to the Pre Sentence Investigation Report. The number immediately proceeding it refers to the paragraph number cited.

[2] The written plea agreement incorrectly cited five years as the statutory maximum sentence.

she entered, including giving the government power to raze Contreras' rental apartments and hotel used to illegally harbor the illegal aliens  (Rearraignment p. 37-41, 42, 44).  Contreras acknowledged that the plea agreement was not binding upon the court, and that Contreras would not have the right to withdraw her plea. Contreras acknowledged that the PSR would make relevant conduct findings from which the district court would base her sentence (Rearraignment p. 53, 54).

The probation department scored her at base offense level 12, assessed a nine-level adjustment for the offense involving four hundred thirty-nine (439) aliens, assessed a four-level adjustment for being an "organizer" but assessed a three-level downward adjustment for acceptance of responsibility (PSR. 84, 86, 88, 90, 91).   Her criminal history score placed her in Criminal History Category One, for a sentencing range of 41-51 months (PSR 122).  The PSR deemed her net worth to be $124,800 (PSR 118).  Contreras objected to the above adjustment relating to the number of aliens involved (PSR Add. P. 31; R. 348).  Probation lowered the number of aliens for which Contreras was responsible to one hundred eighty (180), as the inflated figure included aliens outside the time frame of the conspiracy (R. 478, p. 3).

On October 15, 1999, at sentencing, it would appear the district court denied Contreras' objection to the PSR, and sentenced her to the top of the guideline level she scored (R. 412, 423).  The district court sentenced Contreras for Count One to fifty-one (51) months imprisonment, to be followed by a three-year term of supervised release.  The court assessed a $15,000.00 fine.  She was also ordered to pay $100.00 in mandatory costs. The judgment was entered

3

October 21, 1999 (R. 423).  The judgment became final on October 31, 1999 (F.R.
APP. P. 4[b]).

Contreras did not file a direct Appeal.  On June 27, 2001, Contreras filed
the instant "Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C.
§ 2255".

III.

Contreras' §2255 pleading is untimely.  On April 24, 1996, a one-year
period of limitation was placed upon the filing of motions under §2255.  The one-
year period runs from the date the judgment of conviction becomes final.
Contreras' ability to file such motion expired on October 31, 2000 (one year plus
the ten[10] days after her judgment was entered, with the expiration of the period
for filing notice of appeal).  Although the limitations period may be "equitably
tolled", "equitable tolling applies principally where the plaintiff is actively misled
by the defendant about the cause of action or is prevented in some extraordinary
way from asserting his rights".  *United States v. Patterson*, 211 F.3d 927, 930 (5th
Cir. 2000).  Contreras acknowledges the limitations period expired eight (8)
months prior to her instant filing.  She seeks to invoke "equitable tolling" by an
unsupported and bare assertion of "due diligence".  Such claim is insufficient to
toll her limitations period.  *Id.*  "A garden variety claim of excusable neglect does
not support equitable tolling".  *Coleman v. Johnson*, 184  F.3d 398, 402 (5th Cir.
1999); *Armand v. Strack*, 1999 WL 167720 at *4 (E.D.N.Y. 1999)(allegations
petitioner received poor legal advice and insufficient legal library insufficient to
justify equitable tolling); *Dimetry v. Department of U.S. Army*, 637 F. Supp. 269,

4

271 (E.D.N.C., 1985)(equitable tolling not appropriate where the failure to timely file was allegedly caused by the plaintiff's reliance on advice of counsel); *Nguyen v. Mervau*, 1998 WL 556628 at *2 (N.D. Cal. 1998)(petitioner's lack of fluency in English language and inability to find jailhouse lawyer to assist him are not extraordinary circumstances warranting equitable tolling). But see: *Patterson*, 211 F.3d at 932 (petitioner misled by district court as to filing deadline represented "rare and extraordinary" circumstances warranting equitable tolling); *Davidson v. United States*, 2000 WL 1772656 (N.D.N.Y., Nov. 28, 2000)(00-CV-00869)(Same). Equitable tolling analysis should include whether petitioner actively pursued judicial remedies by filing defective instruments within the limitations period. *United States v. Beggerly*, 524 U.S. 38, 48, 118 S.Ct. 1862, 1868 (1998).

Contreras has neither asserted nor demonstrated "rare and extraordinary circumstances" warranting equitable tolling. Before a request for an extension of time to file a §2255 motion is granted, the district court must first be satisfied that "extraordinary circumstances" beyond a prisoner's control justify the equitable tolling of the AEDPA's clearly established period of limitation. *Alvarez–Machain v. United States*, 107 F.3d 696, 701(9th Cir. 1996). And district judges should only "authorize extensions when this high hurdle is surmounted." *Calderon v. U.S, Dist. Ct. Cent. Dist. Of Cal.*, 128 F.3d 1283, 1286 (9ᵗʰ Cir. 1997). In fact, because the clearly established purpose of the AEDPA's one-year period of limitation is to "accelerate the federal habeas process, ... [e]quitable tolling will not be available in most cases." See *Id.*

5

Courts have held that when external forces, rather than plaintiff's lack of diligence, account for the failure of a complainant or movant to file a timely claim, equitable tolling of the statute of limitations is proper. *Seattle Audubon Society v. Robertson*, 931 F.2d 590, 595 (9th Cir.1991); see also *Forti v. Suarez–Mason*, 672 F.Supp. 1531, 1549–50 (N.D.Cal.1987). For example, when a plaintiff has been unable to file a complaint with a court of competent jurisdiction due to the extraordinary conditions and circumstances of war, statute of limitations are equitably tolled. *Seattle Audubon Society*, 931 F.2d at 596 (citations omitted).

Contreras' justifications for her delay in filing, however, are not "extraordinary circumstances" that support equitable tolling of the AEDPA's period of limitation. They represent the "garden variety" of hurdles and distractions, which do not excuse late filing or toll the limitations period. There is no constitutional right to counsel for the investigation or preparation of a §2255 claim. *Vandenades v. U.S.*, 523 F.2d 1220, 1225 (5th Cir. 1975). As the case law above indicates, reliance upon advice of counsel does not justify the equitable tolling of §2255. *Armand v. Strack*, No. CV 98–6650, 1999 WL 167720 at *4 (E.D.N.Y. Feb. 19, 1999)(allegations petitioner received poor legal advice and insufficient legal library insufficient to justify equitable tolling); *Dimetry v. United States Army*, 637 F. Supp. 269, 271 (E.D. No. Car. 1985)(equitable tolling not appropriate where the failure to timely file was allegedly caused by the plaintiff's reliance on advice of counsel).

Additionally, as the above case law suggests, Contreras' ignorance of the law and the unavailability of legal advice in prison do not justify the equitable tolling

6

of §2255. *Nguyen v. Mervau*, 1998 WL 556628 at *2 (petitioner's lack of fluency in English language and inability to find jailhouse lawyer to assist him are not extraordinary circumstances warranting equitable tolling).

Failing her burden to demonstrate "equitable tolling, compliance with the limitation period is jurisdictional. This Court is without jurisdiction to rule upon the merits of Contreras' §2255 motion.

Additionally, Contreras seeks to restart her one-year clock from the date of the issuance of the opinion in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (U.S.N.J., 2000). If *Apprendi* were made retroactive to collateral review, Contreras would be correct that the clock would restart upon issuance of the *Apprendi* opinion as to those with viable *Apprendi* claims. *United States v. Lopez*, 248 F.3d 427, 433 (5th Cir. 2001), *cert. denied*, 122 S.Ct. 222 (U.S. Oct 1, 2001). Regardless, non-*Apprendi* claims would not be so revived however. 28 U.S.C. §2244(b)(2)(A) limits revived claims under second or successive motions to those relying "on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court". 28 U.S.C. §2253(3) similarly notes "that the limitations period (for initial §2255 claims) runs for one year from 'the date on which the right asserted was initially recognized by the Supreme Court'" *Id.*, at 432. Contreras' "ineffective assistance" claims are not recently recognized rights and are not subject to revival along with coincidental *Apprendi* claims.

However, all this is for naught, as *Apprendi* has not been held retroactive to cases on collateral review by any circuits. *Ashley v. United States*, 266 F.3d 671 (7th Cir. Sept 12, 2001). Although the Supreme Court has not ruled upon whether

7

*Apprendi* is to be applied retroactively to cases on collateral review, several circuits have ruled in the negative. *United States v. Murphy*, — F.3d —, 2001 WL 1203219 (8th Cir. [Minn.] 2001); *Forbes v. United States,* 262 F.3d 143 (2nd Cir. 2001); *United States v. Moss*, 252 F.3d 993 (8th Cir. 2001); *United States v. Sanders*, 247 F.3d 139, 146–51 (4th Cir. 2001); *Jones v. Smith*, 231 F.3d 1227 (9th Cir. [Cal.] 2000). A decision within the district has also ruled in the negative. *Gonzalez v. United States*, 159 F.Supp.2d 555, 562 (S.D. Tex., 2001).

Even if *Apprendi* were made retroactive on collateral review, Contreras does not have a viable *Apprendi* claim. *Apprendi* is only applicable to cases in which the actual sentence exceeds the "unenhanced" statutory maximum. *United States v. Meshack*, 225 F.3d 556, 576 (5th Cir. 2000), *cert. denied*, 531 U.S. 1100, 121 S.Ct. 834 (U.S. Jan 8, 2001).  Here, Contreras faced a statutory maximum sentence of ten (10) years (8 U.S.C. §1324[a][1][B][i], PSR).  Her sentence of fifty-one (51) months was well within the statutory maximum.

IV.

The Government denies each and every allegation of fact made by Contreras except those supported by the record and those specifically admitted herein, and demands strict proof thereof.

V.

Contreras' next hurdle relates to the requirement she demonstrate "cause and prejudice" in not pursuing her instant claims on direct appeal. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  In the absence of a "complete miscarriage of justice", which Contreras neither alleges nor proves, Contreras may

8

not bring a collateral assault on her conviction without demonstrating "cause" for not pursuing her claims on direct appeal and "prejudice" which would be suffered for denial of such collateral review.   Contreras fails to show either cause or prejudice.  The motion should be denied and dismissed under Rule 8(a) of the rules foll. 28 U.S.C. §2255 inasmuch as he offers no cause and prejudice for obtaining review on collateral attack. *See, e.g., United States v. Shaid*, 937 F.2d 228, 231-32 & n.7 (5th Cir. 1991) (en banc) (constitutional or jurisdictional issue reviewable for first time on collateral attack only if the movant demonstrates cause for her procedural default and actual resulting prejudice or that the uncorrected error would result in a complete miscarriage of justice).

An allegation of "miscarriage of justice" warrants collateral review where a constitutional violation has alleged to have caused the conviction of one innocent of the crime. *McCleskey v. Zant*, 499 U.S. 467, 495, 111 S.Ct. 1454, 1470 (1991); *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 2643 (1986).  "The 'cause' standard requires [the movant] to show that 'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (quoting *Romero v. Collins*, 961 F.2d 1181, 1183 [5th Cir. 1992] which in turn quotes *Murray*, 477 U.S. at 488, 106 S.Ct. at 2645).  "Objective factors that constitute cause include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to [the appellant] at the prior occasion, and ineffective assistance of counsel in the constitutional sense." *Id.*

9

To avoid the consequences of a dismissal by applying the fundamental-miscarriage–of–justice exception to Rule 9(b) foll. 28 U.S.C. §2255, a movant must demonstrate, as a factual matter, that he did not commit the crime of conviction. *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 861, 867 (1995); *Ward v. Cain*, 53 F.3d 106, 107 (5th Cir. 1995) (citing *Schlup*). Stated differently, the movant must demonstrate that the failure to consider her claim will result in her continued incarceration though innocent. *See Saahir v. Collins*, 956 F.2d 115, 120 (5th Cir. 1992); *United States v. Espinoza*, 82 F.3d 640, 642 (5th Cir.1996) (citing *Saahir*).

10

VI.

Pretending Contreras has complied with the necessary prerequisites to bring this action, Contreras allegations of "ineffective assistance" is nominally cognizable under §2255.

A. LEGAL PRINCIPLES GOVERNING INEFFECTIVE ASSISTANCE.

Ineffective assistance of counsel claims are generally reviewed under the now well-established *Strickland* standard: "Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064 (1984); *Roe v. Flores–Ortega,* 528 U.S. 471, 120 S.Ct. 1029, 1034 (2000). To succeed on such a claim, a petitioner must first show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 1064. The reasonableness of counsel's challenged conduct must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct" and the reviewing court "must strongly presume that counsel has exercised reasonable professional conduct." *United States v. Samples,* 897 F.2d 193, 196 (5th Cir. 1990)(citations omitted).

1. At the plea stage.

"Effective assistance" requires Counsel to provide meaningful advice on the facts and law applicable to a plea agreement. *United States v. Hodges,* 259 F.3d 655, 659 (7th Cir. 2001); *United States v. French,* 719 F.2d 387, 389 (11th Cir. 1983). "While it need not be errorless, counsel's advice must be within the realm of competence demanded of attorneys representing criminal defendants". *Jones*

11

*v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993). In the context of a guilty plea, Contreras must demonstrate that, but for counsel's errors, she would not have plead guilty and would have gone to trial. *Id.* citing *Hill*, 474 U.S. at 59.

### 2. Sentencing errors

In the context of sentencing errors, the petitioner must show that she was prejudiced by counsel's ineffective assistance. The prejudice prong, however, is more than just an outcome determinative test; it requires the petitioner to demonstrate that the result of the proceeding was fundamentally unfair or unreliable. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 843-44 (1993); *Goodwin v. Johnson*, 132 F.3d 162, 174 (5th Cir. 1997).

To prevail on her claims, Contreras must identify the acts or omissions that are outside the wide range of professionally competent assistance and then demonstrate that but for counsel's unprofessional errors the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. A reviewing court must endeavor to eliminate the distorting effects of hindsight and evaluate the facts from counsel's perspective at the time of trial. To this end, the court will indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Id.* "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable". *Id.* at 690.

The burden falls on the accused to prove a violation of constitutional standards. The focus is on the attorney's impact on the adversarial process; the constitutional standards may be met irrespective of an accused's evaluation. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039 (1984).

Even if Contreras demonstrates that her counsel provided constitutionally infirm representation, Contreras must also demonstrate prejudice. Although Contreras need not demonstrate that, absent the error, her sentence would have been "significantly less harsh", she must demonstrate prejudice. "Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance". *Glover v. U.S.* 531 U.S. 198, 203, 121 S.Ct. 696, 700 (2001).

In order to succeed on this claim, Contreras must establish that trial counsel actions, "fell below an objective standard or reasonableness" and that ' but for' such unprofessional errors the outcome would have been different. *United States v. Samples*, 897 F.2d 193, 196 (5th Cir. 1990). Contreras fails in both regards.


VII.

## ALLEGATIONS

Taking each claimed deficiency in turn;

1. <u>Counsel failed to object to the PSR's finding of 180 aliens.</u>

Contreras argues counsel was "ineffective" in not arguing that some of the aliens counted by Probation represents "double counting". There is no support in

13

the record for this claim. (See: Attachment A, Affidavit of counsel) Counsel for Contreras filed an objection to the PSR contesting the PSR's finding of four hundred fifty-nine (459) aliens and moved for a finding of 25-99 aliens (R 348). Counsel's objection contested the issue and properly preserved it for direct review. *United States v. Cherry*, 50 F.3d 338, 342 n. 8 (5th Cir. 1995); *United States v. Warren*, 186 F.3d 358, 363 (3rd Cir. 1999); *United States v. Luca*, 183 F.3d 1018, 1021 (9th Cir. 1999). For the allegation of "double counting" to have impacted her sentence, Contreras would have to show that eighty-one (81) aliens of the one hundred eighty (180) were "double counted", in order to place her within the 25-99 alien adjustment. She makes no such showing.

    2. Counsel failed to object to a sentence at the high range.

The record disputes this claim. (See: Attachment A). In his objections to the PSR, counsel moved for a sentence at the low end of the Guidelines thirty (30) months. Again at sentencing, Counsel re-urged a sentence at the low end of the Guideline (R. 478, p. 6).

    3. Counsel failed to object to evidence of Contreras' bankruptcies.

Contreras argues she was prejudiced by Counsel's failure to object to evidence of her bankruptcies at sentencing. Contreras believes the prejudice arose from the Court's belief that Contreras' creditors were harmed. Contreras faults Counsel for not pointing out that at sentencing that her creditors were paid in full. However, Contreras misconstrues the context of this evidence. The Court did not cite the bankruptcies out of concern for Contreras' creditors, rather it was in the context of Contreras' indigency. The record at sentencing reveals that the Court

14

disbelieved that Contreras was indigent (R. 478, p. 7). The Court rightly concluded that Contreras made significant amounts of money on every possible aspect of the illegal endeavor. To point out that her creditors were not "stiffed" by her misses the point of the evidence relating to her bankruptcies. Counsel's "failure" herein was not "objectively unreasonable", nor has it been shown to have prejudiced Contreras. (See: Attachment A).

     4. Counsel negotiated a plea agreement which permitted the government an escape clause in paragraph 22.

Contreras' plea agreement does not contain a paragraph 22 or an escape clause as described by Contreras. Furthermore, as counsel explains in Attachment A, an extremely beneficial plea agreement was negotiated by counsel and reached with the government. Contreras voluntarily and knowingly entered into the agreement after reviewing the evidence in detail.

     5. Counsel prejudiced Contreras as the plea agreement permitted the government to demolish income producing property.

     6. Counsel prejudiced Contreras by failing to point out that she was only facing 46-57 months upon conviction of all alleged counts.

Here, as Counsel's affidavit demonstrates, Contreras was fully apprised of the content and effect of her plea agreement. Contreras demonstrated complete understanding of the agreement. It must be remembered that Contreras operated a sophisticated alien smuggling operation, directing all aspects of the scheme. Her inferential claim that she didn't understand that by consenting in the plea agreement to have her "income producing" properties (albeit apparently illegal

income) demolished that she would no longer obtain income from them is not credible, and is further rebutted by counsel's affidavit.

During her rearraignment hearing, the Court found that she was competent tp plead guilty, fully aware of the charges against her, and of the parameters of her plea agreement.

Her claim that she was unaware of her Guideline sentencing range, if convicted of all counts, is also rebutted by Counsel's affidavit.

7. Double jeopardy

Contreras also makes a "double jeopardy" claim, also nominally cognizable herein, on the basis that the court used Contreras' leadership role to assess a four- level adjustment as well as a basis to sentence her to the upper range of the Guideline level she scored.

"Double counting" is not implicated where "different enhancements stem from different concerns, both can be simultaneously applied". *United States v. Kelly*, 993 F.2d 702, 705 (9th Cir. 1993). Pursuant to U.S.S.G. Chapter Five, the district court's determination of a sentence within a particular Guideline level is counseled by 18 U.S.C. §3553(a):

> Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

16

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

17

(b) Application of guidelines in imposing a sentence.--The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

U.S.S.G. §3B1.1 governing "leadership" role "provides a range of adjustments to increase the offense level based upon the size of the criminal organization and the degree to which the defendant was responsible for committing the offense. This adjustment is included primarily because of concerns about relative responsibility.   However, it is also likely that persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate". U.S.S.G.§3B1.1 Background.

The two Guideline provisions involve distinct objects and functions and thus are not subject to concerns of "double counting".  A district court's sentence within the Guideline level the defendant scores is not even reviewable on direct appeal. *United States v. Deavours*, 219 F.3d 400, 402 (5th Cir. 2000).

"Double jeopardy" is not implicated where the "increase" in sentence is within the statutorily proscribed sentencing range. *Witte v. United States*, 515 U.S. 389,115 S.Ct. 2199, 515 U.S. 389, 397 (1995). Here, it is not only within the statutorily proscribed range of punishment, but it is within the Guideline range she scored.

VIII.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Government respectfully prays that

Contreras's §2255 petition be dismissed, or in the alternative, subject to denial by

summary judgment.

Respectfully submitted,

GREGORY A. SERRES
United States Attorney

Mark M. Dowd
Assistant U.S. Attorney
600 E. Harrison, # 201
Brownsville, Texas 78520
Texas Bar No. 06070500
Federal I.D. No. 9314
(956) 548-2554/Fax (956) 548-2549

## CERTIFICATE OF SERVICE

I, Mark M. Dowd, Assistant United States Attorney, certify that a true and correct copy of the above document has been served by placing same in United States mail, postage prepaid, today, November 2 ᒧ , 2001, addressed to:

Olga Contreras
No. 82791-079
Federal Prison Camp
Bryan, Texas, 77805

MARK M. DOWD
Assistant U.S. Attorney

21

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Respondent–Plaintiff | § | |
| | § | |
| vs. | § | CR B–99–50 |
| | § | |
| Olga Contreras, | § | |
| Petitioner–Defendant | § | |
| (CA B–01–113) | § | |

## RECOMMENDED ORDER

The Court, having considered Contreras's motion under 28 U.S.C. § 2255 to vacate sentence and the Government's response, concludes that dismissal of the cause is warranted. Contreras has failed to bring ther action within the limitations period. Contreras has also failed to overcome the jurisdictional burden of demonstrating cause for failure to pursue her claim on direct appeal. Even if the merits were reached, the record refutes the substance of each of her claims.

Therefore, Contreras's motion should be DISMISSED in its entirety.

DONE on this the _____ day of _____, 2001 at Brownsville, Texas.

_____
FELIX RECIO
UNITED STATES MAGISTRATE JUDGE

ATTACHMENT "A"

STATE OF TEXAS   *
        *
        *
COUNTY OF CAMERON *

## **AFFIDAVIT**

My name is Jose A. Esquivel, Jr. I was the attorney representing Olga Contreras in Cause No. CR-B-99-050-01, United States v. Olga Contreras, et al. Olga Contreras filed a 28 U.S.C.§ 2255 motion alleging ineffective assistance of counsel. The undersigned counsel has the following responses to each allegation and denies that he committed ineffective assistance of counsel in representing Olga Contreras.

**Allegation No. 1:** "The defense counsel appropriately objected to the Court not adhering to the number of aliens specified in the Plea Agreement. However, he failed to object to the probation officer's computation of 180 aliens. The Probation Officer's error of adding the same individuals twice or thrice has inflated the number, thus prejudicing the judge."

**Response:** Counsel for defendant Olga Contreras filed an objection to the PSR contesting the PSR finding of 459 aliens and moved for a finding of 25-99 aliens. Additionally, counsel objected to the computation of aliens at the sentencing of Olga Contreras. Counsel's objection properly preserved it for direct review.

**Allegation No. 2:** "The defense counsel failed to object to the court's finding that defendant should be punished at the upper level of the guidelines range because she was the "leader"."

**Response:** Counsel disputes the allegation by Olga Contreras. The record reflects

that counsel objected to the PSR and moved that she be sentenced at the low end of the guidelines. (30 months).  At sentencing, Counsel moved that Olga Contreras be sentenced at the low end of the guideline range. (R. 478, p.6).

    **Allegation No. 3:** "The defense counsel failed to object to the Government using defendant's bankruptcies to prejudice the judge."

    **Response:** Counsel argues that the defendant's bankruptcies did not prejudice the judge; the judge was concerned with the "lucrative business" that she was involved in with the aliens. (R. 468, p.7).

**Allegation No. 4:** " The defense counsel was deficient in negotiating a plea agreement wherein paragraph 2, the government agrees to relevant conduct being limited to not more than 99 aliens and the defendant be sentenced at the bottom of the guideline level.  In paragraph 22, the government reserves the right to dispute the sentencing factors it agreed to recommend in the first place."

    **Response:** Counsel was not deficient in negotiating a plea agreement with the government.  The plea agreement was explained to Olga Contreras and she voluntarily accepted it.  Olga Contreras was charged in in 23 different counts of a 44 count indictment. The indictment contained  1 count of Conspiracy to transport and harbor aliens; 6 counts of  harboring aliens; 1 count of Conspiracy to money laundering; 8 counts of money laundering; 1 count of conspiracy to commit food stamp fraud; 1 count of food stamp fraud; 1 count of conspiracy to possess counterfeit social security cards; and 4 counts of possession of counterfeit social security cards.  Olga Contreras pled guilty to one  count of Conspiracy to transport and harbor aliens with the agreement that the government

2

would recommend: (1) the low end of the guidelines; (2) get full credit for acceptance of responsibility (3) relevant conduct be limited to not less than 25 nor more than 99 illegal aliens; (3) that she be assessed as a leader/organizer; and (5) government stipulated that there was no reckless endangerment to the aliens. Additionally, the Government would dismiss all 22 remaining counts. Under the plea agreement with the Government, Olga Contreras guideline sentence would be between 30 to 37 months. Defense Counsel states that he obtained a very good plea agreement considering all the different counts charged to Olga Contreras and the overwhelming evidence that the government had against her.

Defense counsel carefully explained and went over the evidence that the Government had against her. Defense counsel and Olga Contreras listened to the audiotapes of the taped converations that she made with the undercover officers that went to her business to "harbor" illegal aliens. After listening to the implicating audiotapes, Olga Contreras and myself decided that it was in her best interest to negotiate the best possible plea that could be obtained from the government.

**Allegation No. 5:** " The defense counsel prejudiced the client that under the plea agreement, the government had caused his client to demolish four of her income earning properties thus, destroying her ability to pay any court fines."

**Response:** Counsel fully explained to Olga Contreras that the four properties were going to be demolished as part of the plea agreement with the Government. The properties that were going to be demolished were used to house the illegal aliens. This condition of the plea agreement was explained by me before she voluntarily signed the plea agreement. Additionally, the court admonished her as to the terms of the plea

3

agreement and fully explained to Olga Contreras that the 4 properties would be demolished as part of the plea agreement.  Olga Contreras voluntarily agreed and consented to this part of the plea agreement.

**Allegation No. 6:** "The defense counsel prejudiced his client when he failed to point out that Paragraph 24 of the PSI state that had the defendant been convicted of all the counts, her sentence range would have been 46 to 57 months."

**Response:** Prior to entering a plea, Counsel did explain the full sentencing range for each count in the indictment.  Olga Contreras was charged in 23 counts of a 44 count indictment.  The defendant pled guilty to count 1 of the indictment, which was Conspiracy to transport and harbor illegal aliens.  The plea agreement was accepted by Olga Contreras after being fully explained the terms and conditions.  If the Court would have accepted the plea agreement, the sentence would have been 30 months.  The defendant was explained that the Court could or could not follow the plea agreement.  Defense counsel explained to Olga Contreras that the plea agreement was merely a recommendation by the government and that it was up to the Judge to decide if the agreement would be followed.  Additionally, I explained to Olga Contreras that if the Judge shoud reject the recommendation, she would not be allowed to withdraw her plea.  After reviewing all the government's evidence, which included the audiotape conversations with Olga Contreras and the undercover officers, it was her desire to negotiate a favorable plea agreement and not to proceed to trial.  Olga Contreras was fully aware of guideline ranges for each count because it was explained by defense counsel.

4

Jose A. Esquivel, Jr.

SWORN AND SUBSCRIBED to before me Jose Esquivel, Jr. , on this the
__26th__ day of November 2001.

Belia V. Zepeda

Notary Public
State of Texas

BELIA V. ZEPEDA
MY COMMISSION EXPIRES
January 4, 2005

5